UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DARRELL LEON JENNINGS,<br><br>Defendant. | No. 1:17-cr-00155-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. Nos. 78, 85) |

Pending before the court is defendant Darrell Leon Jennings' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on defendant's medical condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19") outbreak. (Doc. No. 78.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On November 7, 2018, defendant pleaded guilty to conspiracy to distribute and to possess with the intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin, five kilograms or more of a mixture or substance containing a detectable amount of cocaine, and 50 grams or more of actual methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, all in

violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) as charged in Count One of the indictment in this case. (Doc. Nos. 69 at 2; 70.) After his plea was entered, it was determined that under the U.S. Sentencing Guidelines, defendant Jennings' adjusted offense level was 29 and his criminal history placed him in category I. (Doc. No. 73 (Presentence Report) at 19.) Due to the nature of defendant's offense and the amount of controlled substances involved, the charge on which he was convicted carried with it a mandatory minimum sentence of 120 months in prison and a maximum sentence of life imprisonment. (*Id.*) The U.S. Probation Office recommended a sentence of 120 months. (*Id.*) However, after the presentence report was prepared, the government agreed that defendant Jennings was safety-valve eligible and that the correct guideline range for his offense of conviction called for a sentence of between 70 and 87 months imprisonment. (Doc. No. 74 at 1.) At sentencing, the government recommended a low-end sentence of 70 months in prison. (*Id.* at 2.) On January 28, 2019, the court varied downward from the sentencing guideline range and sentenced defendant Jennings to 60 months in the custody of the U.S. Bureau of Prisons (BOP), with 60 months of supervised release to follow. (Doc. Nos. 75; 76 at 2–3.)

Defendant is currently serving his sentence at the BOP's Sheridan Federal Correctional Institute located in Sheridan, Oregon ("FCI Sheridan"). (Doc. No. 78 at 1.) On July 13, 2020, defendant, proceeding through appointed counsel, filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 78.) On August 3, 2020, the government filed its opposition to the motion, and on August 12, 2020, defendant filed his reply thereto. (Doc. Nos. 83, 84.) On September 9, 2020, defendant filed a supplemental brief in support of the pending motion. (Doc. No. 85.) On September 16, 2020, the government filed its response to the supplemental brief, and on the same day, defendant filed a sur-reply. (Doc. Nos. 86, 87.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not

be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6

3

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL

---

months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.    Administrative Exhaustion**

On June 8, 2020, defendant submitted an administrative request to the Warden at FCI Sheridan seeking compassionate release. (Doc. No. 83-1 at 6.) According to the government at

the time it filed its opposition to the pending motion on August 3, 2020, well more than 30 days after it was submitted, "[t]hat request is still pending." (Doc. No. 83 at 4.) Accordingly, the court concludes that defendant Jennings has satisfied the requirement that he first exhaust his administrative remedies with the BOP before bringing his motion for compassionate release before this court because he filed the pending motion more than 30 days after submitting his request for compassionate release to the BOP and no action was taken in response thereto. The court will, therefore, turn to the merits of defendant's motion below.

**B.      Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii).  Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations.  *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors.  In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4]  In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1).  *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Jennings argues that extraordinary and compelling reasons warranting his compassionate release exist due to medical condition.  Defendant is currently 52 years old.  (*See* Doc. No. 73 (Presentence Report) at 2.)  Thus, to qualify for compassionate release, defendant Jennings must demonstrate that he is suffering from some serious medical condition "that substantially diminishes [his] ability . . . to provide self-care" in FCI Sheridan and the medical condition is one "from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  Defendant argues that his chronic obstructive pulmonary disease (COPD), obesity,

---

[4]  However, because defendant Jennings is only 52 years old (Doc. No. 80 at 3), his age and age-related factors do not play a role in consideration of his pending motion.

7

hypertension and/or high blood pressure, and history of smoking warrants his compassionate release at this time. (Doc. No. 78 at 14.) It was noted at the time of sentencing that defendant Jennings reported he suffered from high blood pressure, sciatic nerve pain in his back, and bronchitis, among other ailments. (Doc. No. 73 (Presentence Report) at 12–13.) Defendant reported at that time that he was not receiving breathing treatments for his bronchitis at the Kern County Jail where he was detained even though they had been recommended. (*Id.* at 13.) When defendant was sentenced, he was six feet tall and weighed 230 pounds. (*Id.* at 2.) This would place his body mass index (BMI) at 31.2. *See Adult BMI Calculator*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english bmi_calculator/bmi_calculator.html (last visited Oct. 7, 2020). According to defendant's BOP medical records, which were generated in June 2020, he suffers from four medical conditions: sleep apnea, myopia, essential (primary) hypertension, and allergic rhinitis. (Doc. No. 89 at 40 (sealed).) Defendant has gained weight since being incarcerated, resulting in an increased BMI. (*Id.* at 5.) Further, for approximately seven years prior to his arrest, defendant smoked a pack of cigarettes a day. (*Id.* at 25.) Importantly, however, no medical evidence before the court corroborates defendant's contention that he suffers from COPD (which can include chronic bronchitis). While the pending motion cites defendant's own complaints to the BOP medical staff regarding his self-diagnosis of COPD and/or bronchitis, the BOP medical records state that defendant has never suffered from COPD (at least as of April 2019). (*Id.* at 19 (sealed: "Hx of COPD: No.").)[5] Nonetheless, it has been established that defendant is obese, suffers from hypertension, and is a former smoker.

According to the U.S. Centers for Disease Control and Prevention ("CDC"), defendant is at higher risk of becoming severely ill were he to contract the COVID-19 virus based on his obesity because his BMI is greater than 30. *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION,

---

[5] Furthermore, according to the results of a test performed in May 2019, defendant's "[l]ungs and pleural spaces are clear" and there was "[n]o radiographic evidence for an acute cardiopulmonary process." (Doc. No. 89 at 62 (sealed).) The court finds defendant's discounting of the substance of these medical records to be unpersuasive. (*See* Doc. No. 87 at 2.)

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Oct. 7, 2020). Additionally, defendant "might be at an increased risk for severe illness from COVID-19" based on his essential hypertension and/or high blood pressure. *Id.* (stating those who suffer from pulmonary hypertension are in fact at risk, as opposed to hypertension generally which "may" place an individual at risk). Last, defendant's history of smoking may also place him at greater risk of becoming severely ill were he to contract COVID-19. *Id.*

Therefore, because of defendant's obesity, hypertension, history of smoking, and the associated risks posed to him by COVID-19, the court concludes that defendant is "suffering from a serious physical . . . condition . . . from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Even so, the remaining question then is whether defendant Jennings' medical conditions "substantially diminish[] [his] ability . . . to provide self-care" inside of FCI Sheridan. *See id.*

Based on the current evidence before the court, defendant has not shown that he is significantly hindered or unable to provide self-care while incarcerated at FCI Sheridan. First, it appears that FCI Sheridan suffered from a relatively mild outbreak of COVID-19, with it being reported by the BOP that only five inmates and zero staff members contracted the virus and recovered, and with no reported deaths. *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Oct. 7, 2020).[6] Currently, the BOP is reporting that there are no active reported cases of the virus at FCI Sheridan.[7] Therefore, defendant's concern that the presence of COVID-19 within FCI Sheridan may make it difficult for him to exercise self-care is speculative at this time. (*See* Doc. No. 78 at 20 (arguing defendant will be

---

[6] FCI Sheridan, and the attached detention center, collectively house 1,098 inmates. *FCI Sheridan*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/she/ (last visited Oct.75, 2020).

[7] The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those reported numbers.

"imperiled" if he remains in FCI Sheridan).) Second, and aside from the general risk of COVID-19, defendant does not argue how his medical conditions have in any way diminished his ability to provide self-care. According to some of defendant's most recent BOP medical records submitted in connection with the pending motion, defendant's general appearance was reported as "[w]ell" and it was noted that his pulmonary system was "[c]lear," with no reports of "[w]heezing." (Doc. No. 89 at 6 (sealed).) As the government points out, defendant appears to be receiving proper care from the medical staff at FCI Sheridan and has been instructed on how he can mitigate some of the ailments from which he suffers on his own. (*See id.* at 6, 8, 31 (sealed).)

Based on the evidence presented in connection with the pending motion, the court cannot conclude that defendant has demonstrated that he is significantly diminished in his ability to provide self-care with respect to his medical conditions while incarcerated at FCI Sheridan. Therefore, the pending motion fails to demonstrate extraordinary and compelling reasons justifying defendant's compassionate release. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

**C.     Consistency With the § 3553(a) Factors**

Because the pending motion and supplemental brief fail to establish extraordinary and compelling reasons justifying compassionate release in this case, the court need not address whether any reduction in defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[8]

/////

/////

/////

---

[8] Nonetheless, and as noted above, the court would note that defendant Jennings was convicted of an offense carrying with it a ten year minimum mandatory sentence due to the large amount of controlled substances involved. Because he was found to be eligible for safety valve relief, his advisory sentencing guideline range was determined to call for a term of imprisonment of between 70 and 87 months. At sentencing his counsel argued for a sentence of not more than 70 months. (Doc. No. 72 at 3.) The sentencing judge nonetheless varied downward to a sentence of 60 months. That sentence fully and fairly considered the relevant factors set forth at 18 U.S.C. § 3553(a).

**CONCLUSION**

For the reasons explained above, defendant's motion for compassionate release (Doc. Nos. 78, 85) is denied.

IT IS SO ORDERED.

Dated: **October 9, 2020**

*Dale A. Drozd*

UNITED STATES DISTRICT JUDGE