UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>         Plaintiff, <br> v. <br> DARRELL LEON JENNINGS, <br>         Defendant. | Case No.: 1:17-cr-00155 JLT <br><br> ORDER DENYING MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE <br><br> (Doc. 110) |

    Darrell Jennings was convicted of conspiracy to distribute and possess with the intent to distribute heroin, cocaine and methamphetamine. Jennings used his semitruck, tractor-trailer rig to transport Mexican-imported drugs for his co-conspirators. When his big rig was searched, officers found 14 pounds of heroin and 24 pounds of cocaine hidden in a secret compartment. Once alerted that he was going to be arrested, Jennings took on a new name and evaded arrest for eight months. Nevertheless, the Court imposed a sentence that was below the guidelines.

    Since starting his supervised release about three years ago, Mr. Jennings has been employed—having restarted his trucking company—and has complied with the terms of supervision. He now seeks early termination of his supervised release. Though his probation officer supports the request, the government opposes it. For the reasons set forth below, the motion is **DENIED**.

///

1

**I. Background**

In 2016, the DEA began investigating a drug trafficking conspiracy. Initially, the co-conspirators sold two pounds of methamphetamine to a confidential source. (Doc. 73 at 4) Eventually, investigators discovered that the conspiracy also involved Darrell Jennings, who was a self-employed truck driver, and who was using his semitruck to transport drugs originating in Mexico. *Id*. at 4-5. In May 2017, investigators learned that Jennings would pick up drugs in the Los Angeles area and transport them to Bakersfield, California and to later would meet up with a drug courier in Chicago. *Id*. at 5.

As Jennings arrived in Bakersfield, officers stopped his vehicle due to an expired registration, and Jennings gave permission to the officers to search his vehicle.  (Doc. 73 at 5) Though the officers searched the truck, they could not find the drugs. (Doc. 110 at 3) They released Jennings but obtained a search warrant to do a more complete search. *Id*. This time, the officers found a hidden compartment, which housed 14 pounds of heroin and 24 pounds of cocaine. *Id*.; Doc. 73 at 5. The officers contacted Jennings who agreed to turn himself in. Doc. 110 at 3. Despite agreeing to surrender, Jennings did not and was at-large for eight months before the U.S. Marshal Service could locate and arrest him on February 1, 2018. *Id*.; Doc. 50; Doc. 58. On April 18, 2018, Jennings filed a motion for bail review, seeking release from custody, though he withdrew it soon thereafter. Docs. 62, 64.

Eventually, Jennings plead guilty to the conspiracy charge, and the government dismissed the remaining charges. (Docs. 69, 70, 76) On January 28, 2019, the Court sentenced him to a below-guidelines sentence of 60 with 50 months of supervised release to follow. In July 2020, Jennings filed a motion for compassionate release. Doc. 78. He argued that the COVID pandemic, n light of his medical conditions justified his early release. *Id*. The Court denied the motion and again on reconsideration. (Doc. 91, 98)

Jennings filed his motion for early termination of supervised release on March 28, 2025. (Doc. 108) He asserts that he has complied with the terms of his supervision. *Id*. at 2. He has completed substance abuse treatment, has not used drugs and has restarted his trucking company. *Id*. He reports that he "would like to obtain a Hazmat endorsement and Transportation Worker

Identification Credential, but I am concerned that my status on supervised release will present an issue."[1]

The Probation Office agrees with Mr. Jennings' request:

> Mr. Jennings commenced supervision on January 13, 2022. Since his release, Mr. Jennings has maintained some degree of employment. Mr. Jennings has returned to his career as a truck driver but worked locally for a farming/dairy company initially and has expanded to longer multi day trips over the period of supervision. Mr. Jennings has maintained his business, while he sets his hours and accepts work at his discretion. He is considered a contractor, and his work is generated through a third-party broker. The broker obtains the work from the companies and disperses the work among the drivers. Mr. Jennings has downsized and is currently driving a Dodge Ram 3500 with a flatbed trailer. Mr. Jennings has remained compliant with DOT (Department of Transportation) requirements and has had several compliance checks by CHP (California Highway Patrol) and other highway patrol agencies which have all resulted in no citations or warnings.
>
> Mr. Jennings currently resides with his wife, Cherrie Jennings, and their children. Cherrie serves as the contact person for Mr. Jennings while he is driving and sometimes accompanies him on trips. The residence is well cared for, and Mr. Jennings hopes to buy property in the Central District of California upon his completion of supervision. Mr. Jennings has incurred some health issues over the last year which have been addressed with regular doctor visits and a decrease in the duration of his work trips.
>
> Mr. Jennings has a varied but dated criminal history with charges for inflicting corporal injury on spouse in 1991, 1992, and 1997. His last arrest prior to the controlling offense arrest for the underlying offense was in 2015, for driving without a license and failure to stop at a red limit line. Since the commencement of supervision, there has been no violation conduct and no opposition to supervision. At this time, probation would be unopposed to early termination of supervised release. Probation does acknowledge Mr. Jennings has returned to trucking which was a contributing factor to the circumstances in the underlying offense.

The government opposes the motion. (Doc. 110) The government argues that, though Jennings has complied with the terms of his supervision, this alone is insufficient. *Id*. at 6. When compared to the pertinent factors set forth at 18 U.S.C. § 3553(a) and the goals of supervision, the government argues that Jennings has not demonstrated that termination of supervision early is justified. *Id*. at 5-7.

**II. Analysis**

The Court acknowledges its discretion to terminate supervision early in this case. In

---

[1] A felon convicted of "Distribution of Intent to distribute, or importation of a controlled substance" or conspiracy to do so, is disqualified for five years after release from prison from holding a HazMat endorsement. https://www.dmv.ca.gov/portal/driver-education-and-safety/educational-materials/fast-facts/federal-hazardous-materials-requirements-ffdl-29/ (last visited April 6, 2025). Thus, it appears that unless he is granted an exception, he will not be qualified to obtain the certification even if her is released from supervision.

3

1  considering the motion, the Court notes, first, that the underlying offense was serious, and it
2  involved a large volume of drugs. Second, Jennings reported that the reason for his involvement
3  in the crime was his need to pay for his semitruck. (Doc. 73 at 6) Though he had past issues with
4  substance abuse, it appeared that he had not used drugs or alcohol in years when involved in the
5  crimes, though he admitted the need for ongoing treatment to prevent relapse. *Id*. at 13.

6  During supervised release, Jennings has done well.  He has been employed; first with a
7  company and now as an owner/operator and involved contracting work. He has completed drug
8  treatment and tested negative for drug use and has complied with the other conditions of
9  supervision. The Court appreciates this and the the reasons expressed by probation, which it
10 asserts supports early termination of supervision. However, the Court has greater concerns than
11 those expressed by Probation, about the fact that Mr. Jennings is again in the transportation
12 business which, of course, qualified him to be part of the drug trafficking operation in the past.
13 While acknowledging that Mr Jennings has been compliant, the Court notes that Mr. Jennings has
14 returned to nearly the same life he had when he committed his crime. Seemingly, he is in the
15 same committed relationship, has the same family relationships, has the same responsibilities and
16 is engaged in the same work. Given this, the Court is quite wary that whatever enticed him into
17 committing his crime, will do so again.[2]

18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///

26

---

27 [2] Though completing drug treatment and testing negative for the use of drugs is admirable, drug abuse was not a reason why Mr. Jennings committed his crime. Thus, satisfying these drug requirements does not
28 demonstrate why supervision can be withdraw without putting the public at risk.

That being said, Mr. Jennings should be proud of what he has accomplished thus far. It is not easy to take responsibility for criminal conduct and, though he initially fled from prosecution, he eventually took responsibility for his crime, accepted his punishment and has tried to atone. However, unfortunately, the Court has too many questions that have not been addressed by his moving papers. The current evidence is insufficient to show that the public would be adequately protected or that the interests of justice warrant the relief sought here. Thus, after considering the relevant § 3553(a) factors and the § 3583(e)(1) factors, the motion for early termination of supervised release is **DENIED**.

IT IS SO ORDERED.

Dated:   **May 6, 2025**

UNITED STATES DISTRICT JUDGE